## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No. 19-cr-00142 (KBJ)** |
| | : | |
| **ABU NASER HOSSAIN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in Support of its Motion for Pretrial Detention of Defendant Abu Naser Hossain under 18 U.S.C. § 3142(f)(2)(A).[1]

## APPLICABLE LAW

A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

---

[1] At the initial appearance on May 1, 2019, the government also moved for the defendant's detention pursuant to 18 U.S.C. § 3142(d)(1)(B). On May 2, 2019, U.S. Immigration and Customs Enforcement lodged a detainer with the District of Columbia Department of Corrections (*see* Exhibit 13), so this request may now be moot.

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As set forth more fully below, these factors weigh in favor of detaining the defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 1998, Abu Naser Hossain submitted to the United States Embassy in Dhaka, Bangladesh, three applications seeking visas that would permit his entry into the United States. In support of each application, the defendant represented himself to be a citizen of Bangladesh and presented Bangladesh passport number L0794836 as a form of identification. The third of these applications, for a NIV Fl (Student Visa), was approved, and the United States government issued the defendant a visa permitting him to enter the United States as a student.

On November 17, 1998, the defendant landed at John F. Kennedy International Airport in Queens, New York, aboard a flight from Bangladesh. Upon arrival, the defendant presented his Bangladesh passport number L0794836 and was admitted entry into the United States. From in or around November 1998 through in or around May 2001, the defendant was enrolled as a student at a university located in New York State. After leaving his studies at the university, the defendant remained in the United States. The defendant has remained in the United States, without legal status or authority to do so, ever since.

Between 1998 and 2012, in several official government documents, the defendant represented himself to be a citizen of Bangladesh, born in Bangladesh. On November 23, 2010,

the defendant applied for and obtained a District of Columbia identification card. When asked on the application for the card if he is a U.S. Citizen, he answered, "NO" (*see* Exhibit 1). Also in 2010, the defendant filed an Immigrant Petition by Alien Entrepreneur with the U.S. Citizenship and Immigration Services ("USCIS") (*see* Exhibit 2). In it, he claimed that his place of birth was Bangladesh (Exhibit 2, page 1, Part 1). He also stated that his country of nationality was Bangladesh (Exhibit 2, page 3, Part 6).  Finally, in a cover letter for the application, the defendant introduced himself as "Abu Naser M. Hossain, Citizen of Bangladesh," and described how he came to the United States in 1998 for study (Exhibit 2, page 4).  He closed this letter by stating that if the government granted his petition, he would be "grateful to you and *your* country" (*id.* (emphasis added)). USCIS denied the defendant's petition and made findings that he had submitted fraudulent documents in support of this application (*see* Exhibit 3). Finally, in February 2012, the defendant applied for an advanced parole document that would permit him to return to the United States after a foreign trip he had planned for March 2012 (*see* Exhibit 4). In that application, the defendant represented his place of birth and country of citizenship both to be Bangladesh (Exhibit 4, page 1, question nos. 7 and 8).  This petition was also denied.

Since December 2012, the defendant has filed four applications with the United States Department of State, seeking the issuance of a United States passport. In each of these applications, the defendant has falsely claimed that he was born in the United States and is a citizen of the United States. The defendant then repeated this false statement about his birthplace to investigators from the U.S. Department of State Diplomatic Security Service, who followed up with him regarding these passport applications, and he also presented Department of State agents with a birth affidavit, purportedly signed by his mother and alleging that he was born in the District of Columbia, that

falsely claimed to have been signed and attested to in the presence of a notary (*see* Exhibit 5).[2] Finally, the defendant has falsely claimed United States citizenship in several voter registration documents (*see* Exhibit 6), in order to vote in United States elections, and in an application for a pilot's license (*see* Exhibit 7).

On April 30, 2019, a grand jury of the United States District Court for the District of Columbia returned an indictment charging the defendant with four counts of Making a False Statement in Application and Use of Passport, in violation of Title 18, United States Code, Section 1542; two counts of False Claim to United States Citizenship, in violation of Title 18, United States Code, Section 911; and one count of Making or Using a False Writing, in violation of Title 18, United States Code, Section 1001(a)(3). On May 1, 2019, the defendant was arrested, presented, and arraigned in this matter. The government's detention request was preliminarily granted, and the matter was scheduled for a detention hearing on Monday, May 6, 2019.

## ARGUMENT

### The Defendant Should Be Detained Pending Trial Because He Presents a Substantial Risk of Flight.

In light of the conduct in this case, the defendant's non-citizen status, the defendant's foreign assets and connections, and the penalties the defendant faces for perpetrating these crimes, pretrial detention is necessary to ensure that the defendant does not flee to evade prosecution.

### A.     The nature and circumstances of the offense

The nature and circumstances of the offense weigh in favor of detention for several reasons. The grand jury found probable cause to believe that the defendant committed the offenses of

---

[2] Agents investigating this matter interviewed the notary, who stated that the defendant's mother was not present at the time the notary was asked to notarize the document. The notary explained that she was uncomfortable notarizing the document under these circumstances but was instructed to notarize the document by her supervisor, who was the manager of a bank branch at which the defendant did a significant amount of banking business.

Making a False Statement in Application and Use of Passport, Making False Claims to United States Citizenship, and Making or Using a False Writing. His conduct involved lying to federal agents and agencies, knowingly presenting federal agents with fraudulent documents, and seeking to unlawfully obtain the benefits of United States citizenship while knowing that he was not, in fact, a U.S. citizen. The charges against the defendant expose him to a serious period of incarceration. The four counts of Making a False Statement in Application and Use of Passport alone each carry a statutory maximum penalty of ten years of incarceration; the False Statements charge carries a five-year statutory maximum; and the False Claims to U.S. Citizenship charges carry a three-year maximum penalty.

### B.  The weight of the evidence against the defendant

The weight of the evidence against the defendant is strong. The United States government has no record of the defendant being present in this country prior to his entry on a student visa, in 1998. As noted above, when the defendant applied for this visa, he declared himself to be a citizen of Bangladesh, not an American returning home. Between 1998 and 2012, the defendant repeatedly represented himself to be a citizen of Bangladesh, born in Bangladesh. As described above, the defendant submitted and signed multiple official government documents in which he listed Bangladesh as his place of birth and place of citizenship, including: the three visa applications he submitted to come to this country, a D.C. government identification card application, a petition for alien entrepreneur immigration status, and a petition for advanced parole to leave and re-enter the United States.  It was only in 2012 that the defendant started claiming to have been born in the United States, likely because of the failure of his prior efforts to obtain documents that would permit him to return to this country after leaving to visit family in

Bangladesh.[3]

As defense counsel referenced at the initial appearance on May 1, 2019, the defendant is engaged in civil litigation pending in D.C. Superior Court in which he is seeking to force the D.C. Department of Vital Statistics to issue him a delayed certification of birth (D.C. Superior Court Case No. 2017-CA-000531). This civil litigation arises from the Department's denial of the defendant's application for a delayed record of birth (*see* Exhibit 9). In this civil litigation and in statements that the defendant has made to law enforcement agents investigating the instant criminal matter, the defendant has alleged that he was born in 1976 in Washington, D.C., at a residence his parents were renting in the Adams Morgan neighborhood, with the help of a midwife his parents obtained through a local charitable organization.

For many reasons, this version of events is incredible. First and most notably, as mentioned above, it contradicts the defendant's own statements between 1998 and 2012, in which he declared that he was a citizen of Bangladesh, born in Bangladesh. Second, the District of Columbia Department of Vital Statistics has no record of the defendant's birth here, and the U.S. government has no record of his parents ever entering this country. Third, the defendant has three older siblings who would have been six-and-a-half years, three years, and just a couple of months old in early 1975; if the defendant's version of events is true, his parents would either have needed to have abandoned these children in Bangladesh and come to the United States by themselves to start a new life in early 1975, or they would have needed to somehow have found a way to illegally enter the United States with these three small children – and similarly exit the country, without a trace,

---

[3] As explained in one of his letters in support of his application for alien entrepreneur status (*see* Exhibit 8), the defendant developed a need to return home to visit Bangladesh when several family members became ill and after he married his wife, who was in Bangladesh at the time, over the phone in a religious ceremony. Incidentally, this letter is also written as though the defendant is an immigrant to this country and not a citizen (*see especially* the last paragraph of Exhibit 8).

in 1977, now with four children in tow.

Law enforcement agents investigating the instant matter have inquired of personnel at the Embassy of Bangladesh as to whether there is a record of the defendant's birth in Bangladesh and have learned that Bangladesh did not have a formal birth registration system in the 1970s. Since the country has instituted a birth registration system, individuals may now, retroactively, obtain birth registration certificates. According to the website of the Embassy of Bangladesh in Washington, D.C., individuals may obtain a Bangladesh birth registration certificate by filling out a form and submitting the form along with a passport-sized photograph, a copy of their Bangladesh passport, a money order in the amount of $6.00, and a self-addressed, prepaid return envelope with a tracking number. During the course of his applications for a United States passport and for a delayed birth registration certification from the District of Columbia government, Mr. Hossain has submitted at least two copies of such delayed birth registration documents, apparently issued by the government of Bangladesh and listing his place of birth as "America" and "Washington D.C. U.S.A." (*see* Exhibit 12).

Finally, the defendant's version of his birth in this country deserves skepticism because he has supported it with the submission of documentary evidence that is suspect. The D.C. Department of Vital Statistics denied the defendant's initial petition because of inadequacies in the documents he submitted, including the fact that one of the documents appeared to have been altered (*see* Exhibit 9). Additionally, according to pleadings filed in the lawsuit against the District of Columbia government that is currently pending in D.C. Superior Court, one of the items submitted by the defendant to prove his birth in the United States was a letter from a witness that claims that the defendant's mother worked in the witness' restaurant in the District of Columbia in 1977 (*see* Exhibit 10). When interviewed by the government during the course of the instant criminal

investigation, however, this witness explained that he could not have employed the defendant's mother in 1977 because he had only one employee at that time, who was not the defendant's mother. The witness initially did not remember signing the letter, although he later recalled that the defendant drafted this letter and asked the defendant to sign it. The witness said he signed it because he wanted to help the defendant, but he also stated that he does not speak English well and did not fully understand what he was signing.

For all of these reasons, the government has strong and compelling evidence that the defendant is not a citizen of the United States and lacks legal immigration status to be present in this country, and thus committed federal felony offenses when he submitted four applications for a U.S. passport, registered to vote and applied for a pilot's license claiming to be a United States citizen, and presented agents investigating his passport applications with an affidavit from his mother that falsely purported to be signed and attested to in the presence of a notary.

### C.  The history and characteristics of the Defendant

The history and characteristics of the defendant also weigh in favor of detention. Since he has arrived in this country in 1998, the defendant has amassed more than $750,000 in civil judgments entered against him.[4] The government has no information to suggest that the defendant has made any efforts to satisfy these civil judgments, despite the fact that his counsel represented in court at the initial appearance that the defendant earns over $100,000 per year through his tax

---

[4] Specifically, the defendant owes over $6,000 to the New York university he attended from roughly 1998 through 2001; the defendant has two "foreign" judgments from New York and New Jersey that have been entered here in D.C. under Superior Court Case Nos. 2017 CA 3016 and 2015 CA 2658 in the amounts of approximately $199,000 and $166,000; and there is a judgment against the defendant for breach of a commercial lease, breach of a franchise agreement, and fraud, with damages in the amount of $391,000, which arises from the defendant's failure to pay rent to JMU Tax & Preparation Services, the company with whom the defendant initially set up his tax preparation business (as a franchise of JMU) and from whom he appears to have rented his business' first location, at 1933 18th Street, NW (see 2012 CA 8692, recently affirmed on appeal at 147 A.3d 816 (D.C. 2016)).

preparation business.[5] Although the defendant has no criminal convictions, according to the Pretrial Services Agency report, he has two prior arrests. One of these arrests was in D.C. Superior Court Case No. 2012-CF2-4911, in which the defendant was arrested on a warrant charging him with First Degree Theft for writing $54,000 in checks while allegedly knowing that he had insufficient funds in his bank to cover these checks. This case was dismissed by the government, however, two months after the defendant was charged.

### D. The nature and seriousness of the danger to any person or the community posed by the person's release

The fourth factor–the nature and seriousness of the danger to any person or the community posed by the person's release–does not weigh in favor of detention. The government has no information that would suggest that the defendant poses a danger to any other person or to the community. However, the defendant presents a serious risk of flight. In addition to the fact that the defendant is a citizen of Bangladesh, he has family members who reside in Bangladesh, including his father, some siblings, and his wife's father. Furthermore, the defendant told a witness interviewed by law enforcement in this matter that he is building property in Bangladesh, and bank records obtained during the course of this investigation confirm that roughly $7,000 was wired last spring from the defendant's wife's bank account for a "real estate settlement" to an apparent construction/building company in Dhaka, Bangladesh (*see* Exhibit 11). Additionally, last spring, approximately $21,000 was wired from the defendant's wife's bank account to an individual in Bangladesh believed to be her father. The defendant also owns property in the United States that is outside this jurisdiction: through his business, the defendant owns a condominium in Fort Meyers, Florida.[6]

---

[5] In fact, in Case No. 2017 CA 3016, just last month, garnishment orders were entered in an effort to force the defendant to satisfy this judgment.

## CONCLUSION

For the reasons noted above, the government respectfully submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
for the District of Columbia

By: _____/s/_____
KATHRYN L. RAKOCZY
D.C. Bar No. 994559
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6928
Kathryn.Rakoczy@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2019, a copy of the foregoing Memorandum was sent via email to counsel for the defendant.

_____/s/_____
Kathryn L. Rakoczy
Assistant U.S. Attorney

---

[6] The defendant told law enforcement about this property, and the ownership of the property was confirmed through a search in a property/title records database, although this database search also suggested that the property may be involved in foreclosure proceedings.